IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JEAN BEHRENS,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>WILLIAM PATRICK DONNELLY IV;<br>JOHN DOES 1-10; JANE DOES 1-10;<br>DOE CORPORATIONS 1-10; DOE<br>PARTNERSHIPS 1-10; DOE ENTITIES<br>1-10,<br><br>　　　　　Defendants.<br>_____ | CIVIL NO. 05-00453 JMS/KSC<br><br><br><br>ORDER DENYING DEFENDANT'S<br>MOTION TO DISMISS |

ORDER DENYING DEFENDANT'S MOTION TO DISMISS

Defendant William Patrick Donnelly IV ("William Donnelly") has filed a motion to dismiss Jean Behrens's First Amended Complaint. William Donnelly argues that Behrens has failed to join two necessary and indispensable parties in this action. Because joinder of either of these parties would destroy diversity, he argues that this case should be dismissed. William Donnelly also argues that this court should not, as a matter of discretion, exercise jurisdiction over Behrens's declaratory judgment claim.

Behrens contends that the proposed joinder of parties will not divest this court of diversity jurisdiction. Behrens further argues that the court should

entertain her claim for declaratory relief.  For the reasons stated herein, the court concludes that the proposed joinder of parties will not destroy diversity jurisdiction and that the court will entertain Behrens's claim for declaratory relief.  William Donnelly's motion to dismiss is therefore DENIED.

I.  BACKGROUND

This dispute arises out of Behrens's sale of real property on Molokai to William Donnelly, a citizen of South Carolina, with the alleged understanding that Behrens, a citizen of Hawaii, would retain a life estate in the property.  The sole ground alleged for the court's jurisdiction is diversity of citizenship.

In 2003, Behrens and her now deceased husband, Robert Behrens ("the Behrenses"), began seeking buyers for their home, located at Lot 31, Moana Makani Subdivision, Kaluakoi, Hawaii ("the property").  Because the Behrenses were unable to make their mortgage payments, they sought a buyer interested in obtaining the property at a discount in exchange for granting the Behrenses a life estate.  Kevin Donnelly, a citizen of Hawaii and a business associate of Jean Behrens, informed the Behrenses that his father, William Donnelly, would be interested in such an arrangement.  The parties agree that Kevin Donnelly, a citizen of Hawaii, acted as his father's agent for purposes of the sale and that the Behrenses dealt exclusively with Kevin Donnelly.

The Behrenses and William Donnelly reached an oral agreement pursuant to which William Donnelly would purchase the property at a discounted price in exchange for granting the Behrenses a life estate in the property. Due to apparent difficulty in negotiating the life estate, the sale did not take place until December 22, 2003, several months after the oral agreement was reached. On December 15, 2003, a week before the closing, the parties signed a "license agreement" under which William Donnelly granted Behrens the right to remain on the property for the remainder of her natural life and promised to build her a caretaker's home in which to live.

While the sale was pending, Robert Behrens passed away and Jean Behrens experienced increased financial problems. On April 23, 2003, prior to the closing date, Kevin Donnelly allegedly loaned Behrens the funds necessary for her to avoid foreclosure on her home. Behrens contends that she repaid this amount at closing. A few months later, Behrens allegedly borrowed an additional $9,500 from Kevin Donnelly and his wife, Kikue Donnelly (also a citizen of Hawaii). Kevin Donnelly contends that this loan was made with the understanding that Behrens would not have to repay it if the sale between Behrens and William Donnelly went forward as agreed.

Shortly after the closing, Behrens contends that she encountered problems with Kevin and Kikue Donnelly.  Kevin Donnelly allegedly stated that the Donnellys had no intention of building Behrens a caretaker's home as promised in the license agreement.  Behrens contends that the Donnellys have not built the additional home as promised nor have they taken steps to make the primary dwelling, where Behrens currently resides, habitable.

Behrens also alleges that Kevin and Kikue Donnelly made frequent trips to the property in order to harass Behrens.  Behrens states that she suffers from a stress-induced seizure disorder and that Kevin Donnelly knows about her medical condition.  Behrens contends that Kevin Donnelly has harassed and threatened her in a deliberate attempt to exacerbate her medical condition and force her off the property.

On July 27, 2005, Behrens filed her First Amended Complaint against William Donnelly alleging various claims based on fraud and breach of contract.  Her claims center on the actions taken by Kevin Donnelly as William Donnelly's agent during the sale as well as the conduct of Kevin and Kikue Donnelly subsequent to the sale of the property. Behrens seeks:  (1) recision of the sale of the property; (2) a judicial declaration that the sale of the property is void; (3)

special, compensatory, punitive, and consequential damages; and (4) attorneys' fees and costs.

William Donnelly alleges that in May 2005, prior to the filing of the First Amended Complaint, he and Kevin Donnelly agreed that Kevin Donnelly would take over the mortgage payments for the property beginning in June 2005 and that Kevin Donnelly would eventually purchase the property from him.  On September 27, 2005, after the filing of the First Amended Complaint, an Agreement of Sale for the property was allegedly executed between William Donnelly, as seller, and Kevin and Kikue Donnelly, as purchasers.

The court heard arguments from both parties on February 27, 2006.

## II.  STANDARD OF REVIEW

Rule 12(b)(7) provides that an action may be dismissed for failure to join a party under Rule 19.  In order to determine whether Rule 19 requires the joinder of additional parties, the court may consider evidence outside of the pleadings.  *McShan v. Sherril*, 283 F.2d 462, 464 (9th Cir. 1960); Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure: Civil 3d. § 1359 at 68 (2004).

III. ANALYSIS

If Kevin and Kikue Donnelly were necessary and indispensable parties under Rule 19(b) at the time the First Amended Complaint was filed, as William Donnelly contends, then the court must dismiss this case for lack of subject matter jurisdiction because the addition of Kevin or Kikue would destroy diversity. *Salt Lake Tribune Publ'g Co. v. A T &T Corp.*, 320 F.3d 1081 (10th Cir. 2003). The court first addresses the issue of Kevin's and Kikue's relation to the action at the time the First Amended Complaint was filed and concludes that neither Kevin nor Kikue was a necessary or indispensable party at that time.

Second, the court addresses William Donnelly's argument that his post-complaint transfer of the property to Kevin and Kikue Donnelly destroys diversity. The court concludes that a post-complaint transfer of interest in the property does not destroy diversity.

Finally, William Donnelly contends that this court should not, as a matter of discretion, entertain Behrens's claim for declaratory relief. The court concludes that this argument is without merit.

A.  **Kevin And Kikue Donnelly Were Neither Necessary Nor Indispensable Parties at the Time the First Amended Complaint Was Filed**

The court engages in a two-step analysis to determine whether a case should be dismissed for failure to join a necessary and indispensable party under

Rule 19. The court must first determine whether the absent non-parties in question, in this case Kevin and Kikue Donnelly, should be joined as "necessary" parties under subsection (a). *Virginia Sur. Co. v. Northrop Grumman Corp.*, 144 F.3d 1243 (9th Cir. 1998). If the court determines that Kevin and Kikue are necessary parties and cannot be joined for practical or jurisdictional reasons, the next step of the inquiry is to determine whether they are indispensable and therefore the action should be dismissed. *Id.*

> Rule 19 provides:
>
> **(a) Persons to Be Joined if Feasible.** A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest . . . .
>
> **(b) Determination by Court Whenever Joinder Not Feasible.** If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be

7

lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

1. <u>Kevin and Kikue Donnelly were not necessary parties under Rule 19(a) at the time the First Amended Complaint was filed</u>

Neither Kevin nor Kikue Donnelly was a "necessary" party under Rule 19(a)(1) at the time the First Amended Complaint was filed. In her First Amended Complaint, Behrens seeks recision of the sale of the property, a declaratory judgment that the sale of the property is void, and damages resulting from the alleged fraud and breach of contract. The relief Behrens seeks stems from the sale of the property and the life estate she was allegedly promised as partial consideration for the sale. Thus, at the time the First Amended Complaint was filed, Behrens could have obtained complete relief on all of her claims against William Donnelly because he was the sole owner of the property and the party who allegedly promised her the life estate.

Moreover, at the time the First Amended Complaint was filed, neither Kevin nor Kikue Donnelly was a necessary party under Rule 19(a)(2)(i);[1] neither Kevin nor Kikue claimed an interest in the property such that, as a practical matter,

---

[1] Rule 19(a)(2)(ii) is inapplicable to this case. William Donnelly does not argue that the failure to join Kevin and Kikue will "leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest."

8

his or her interests might be impaired by a disposition in this case. William Donnelly has essentially two arguments for why Kevin and Kikue's interests may be impaired by a disposition in this case in their absence. First, William Donnelly argues that, at time the First Amended Complaint was filed, both Kevin and Kikue had an "equitable" interest in the property. Second, he argues that Kevin has an interest in the case because the bulk of Behrens's allegations are leveled at Kevin, not William Donnelly. The court addresses each of these arguments in turn.

> a.  **Kevin and Kikue Donnelly could not claim a legal interest in the property at the time the First Amended Complaint was filed**

Kevin Donnelly submitted declarations indicating that his father purchased the property from the Behrenses with the understanding that Kevin and Kikue would acquire the property when they were able to obtain a mortgage. William Donnelly points to the fact that Kevin and Kikue took over the mortgage payment on the property several months before the First Amended Complaint was filed and that Kevin and Kikue eventually signed an Agreement of Sale of with William Donnelly for the property.

Apart from his bare allegation that Kevin and Kikue have an "equitable" interest in the property, William Donnelly has not articulated the specific basis of Kevin and Kikue's interest in the property that allegedly existed at

the time the First Amended Complaint was filed.  Kevin's and Kikue's plans to purchase the property from William Donnelly, and Kevin's related efforts to facilitate his father's purchase of the property, do not invest Kevin and Kikue with a recognizable interest in the property.  *See Burka v. Aetna Life Ins. Co.*, 87 F.3d 478 (D.C. Cir. 1996) (concluding that a non-party, who agreed to purchase property prior to onset of litigation and then purchased the property after a complaint concerning the property was filed, was not a necessary and indispensable party at the time the complaint was filed).  Absent some evidence that Kevin and Kikue could legitimately claim an interest in the property at the time the First Amended Complaint was filed, their mere plans to purchase the property did not render them necessary parties.  *See Citizen Potawatomi Nation v. Norton*, 248 F.3d 993, 998 (10th Cir. 2001) ("Rule [19] does not protect inchoate interests[.]" (Citation and internal quotation signals omitted.)).

William Donnelly also points to the fact that Kevin and Kikue made two loans to Behrens prior to the closing of the sale between Behrens and William Donnelly.  However, Kevin and Kikue cannot claim an interest in the property on the basis of either of these loans.  The first loan was repaid in full when William Donnelly purchased the property from Behrens and clearly did not invest Kevin and Kikue with an interest in the property.  Behrens, however, did not repay the

second loan. The second loan was made on the condition that Behrens would not have to repay it if she completed the proposed sale of her property to William Donnelly. Though Kevin and Kikue clearly wanted to facilitate the sale of the property to William Donnelly, nothing about this loan suggests that Kevin and Kikue obtained an interest in the property as a result.

    **b. Behrens's allegation that Kevin engaged in much of the conduct underlying her claims does not render Kevin a necessary party under Rule 19(a)**

William Donnelly's second argument is that Kevin Donnelly is an necessary party because Kevin, rather than William Donnelly, is alleged to have engaged in most of the conduct forming the core factual allegations of the First Amended Complaint. The parties agree that Kevin Donnelly acted as an agent for his father throughout the negotiations for the sale of the property. As his father's agent, Kevin made the allegedly misleading representations concerning the life estate to Behrens and also informed Behrens of his father's intentions regarding the caretaker's house. Though an agent generally is not a necessary party to an action against his or her principal, it is possible for an agent to be a necessary party in some circumstances; thus, whether a particular agent is a necessary party should be resolved on a case by case basis. *Soberay Mach. & Equip. Co. v. MRF Ltd., Inc.*, 181 F.3d 759, 765 (6th Cir. 1999).

In this case, William Donnelly purchased the property and signed the license agreement with Behrens. Kevin Donnelly had no independent contractual relationship with Behrens; his only interaction with her was as an agent for his father. William Donnelly principally relies on Exhibit "B" to the First Amended Complaint in support of his argument that Kevin's role as an agent rendered him a necessary party in this action. Exhibit "B" is a document entitled "Agreement" that is signed by Robert Behrens and Kevin Donnelly. It states that Kevin acknowledges the Behrenses were promised a life estate in the property and that Kevin will complete the paperwork on the life estate before the closing date, obtaining William Donnelly's signature if necessary. The document itself does not purport to give Kevin any interest in the property. Though the document lends support to Behrens's claim that Kevin handled the details of the sale, it does not suggest what, if any, interest Kevin might have had in the contract.

Moreover, Behrens seeks recision of the sale of the property and damages based on the sales contract. She properly sought this relief against William Donnelly, who held title to the property at the time the First Amended Complaint was filed and signed the contract and license agreement with Behrens. On these facts, Kevin Donnelly's role as an agent in the sale did not render him a necessary party to this action. *See Milligan v. Anderson*, 522 F.2d 1202, 1205

(10th Cir. 1975) (holding that, where plaintiff sought to rescind a contract, a non-party agent to the defendant was not a necessary or indispensable party); Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure: Civil 3d, § 1613 at 197 (2001) ("When a person is not a party to the contract in litigation and has no rights or obligations under that contract, even though the absent party may be obligated to abide by the result of the pending action by another contract that is not at issue, the absentee will not be regarded as an indispensable party in a suit to determine obligations under the disputed contract.").

      William Donnelly also argues that, at least with respect to Behrens's claim for conversion, Kevin is the *only* party alleged to be responsible and therefore he is a necessary and indispensable party in this action.[2]  Behrens does not specify the factual allegations on which her claim for conversion is based.  Her argument appears to be that Kevin's refusal to build her a caretaker's home and his frequent visits to the property were intended to force her off the property.  At the time the First Amended Complaint was filed, William Donnelly was title-holder to the property and Kevin Donnelly was alleged to be acting as his agent.  A fair

---

[2] To the extent that William Donnelly is arguing that Kevin alone is liable for any wrong-doing alleged in Behrens's conversion claim, Kevin's absence as a party will in no way impede William from pursuing this defense to liability.

reading of the complaint is that Kevin Donnelly acted as a joint tortfeasor with William Donnelly.[3] Joint tortfeasors, however, are not necessary and indispensable parties. *Pujol v. Shearson American Exp., Inc.*, 877 F.2d 132, 137 (1st Cir. 1989) ("[U]nlike a person vicariously liable in tort, a person potentially liable as a joint tortfeasor is *not* a necessary or indispensable party, but merely a permissive party subject to joinder under Rule 20." (Citation omitted.)). Thus, Kevin Donnelly does not need to be joined to this action because of his alleged conduct in relation to Behrens's conversion claim.

    2.    <u>Kevin and Kikue Donnelly were not indispensable parties under Rule 19(b) at the time the First Amended Complaint was filed</u>

The factors considered under Rule 19(b) are similar to those considered under subsection (a); the difference is essentially one of degree. *Glancy v. Taubman Centers, Inc.*, 373 F.3d 656, 670 n.12 (6th Cir. 2004) ("[T]he Rule 19(a)(2)(i) analysis entails a much more hypothetical examination of whether nonjoinder *could* harm the absentee, but the Rule 19(b) analysis is concerned with a more concrete assessment of whether nonjoinder will actually cause harm."). Because the court concludes that neither Kevin nor Kikue Donnelly was a

---

[3] It is unclear whether Behrens's conversion claim is based in tort or contract. If her claim is based on the contract with William Donnelly, then her position must be that Kevin was acting as an agent for his father, since Kevin was not a party to the contract. As discussed above, Kevin's role as an agent in negotiating and executing the sale of Behrens's property to his father does not render him a necessary party to this action.

necessary party in this action at the time the First Amended Complaint was filed, it follows that neither Kevin nor Kikue was indispensable at the filing of the First Amended Complaint; a more concrete analysis of the harm of nonjoinder is unnecessary.

**B.     The Post-Complaint Transfer of the Property from William Donnelly to Kevin and Kikue Donnelly Does Not Destroy Diversity**

William Donnelly also argues that Kevin and Kikue Donnelly's post-Complaint purchase of the property renders them indispensable to this action. He contends that joining Kevin and Kikue based on their acquisition of the property will destroy diversity and thereby deprive the court of subject matter jurisdiction.

William Donnelly makes this argument notwithstanding the Supreme Court's statement in *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 429 (1991), that "diversity jurisdiction is to be assessed at the time the lawsuit is commenced." In *Freeport-McMoRan*, the plaintiff filed a breach of contract action against a diverse defendant. After filing, the plaintiff transferred its interest in the disputed contract to a non-diverse partnership. The Supreme Court rejected the defendant's argument that the substitution of a non-diverse party under Rule 25[4] destroyed diversity. *Id.* at 428. Instead, the Supreme Court held that diversity is

---

[4] Rule 25(c) allows for the substitution or joinder of a party based on a transfer of interest.

15

not destroyed by events that occur subsequent to the filing of the complaint.  *Id.*  The Court reasoned that "[a] contrary rule could well have the effect of deterring normal business transactions during the pendency of what might be lengthy litigation."  *Id.*

*Freeport-McMoRan*'s command that diversity be assessed at the time a complaint is filed could be read to sweep more broadly than is warranted by the holding of the case.  For example, in *Estate of Jose E. Alvarez v. Donaldson Co.*, 213 F.3d 993 (7th Cir. 2000), the plaintiff relied on *Freeport-McMoRan* to justify its position that adding non-diverse defendants to an action after filing the complaint did not destroy diversity.  The Seventh Circuit rejected this argument and joined the Fifth Circuit, *Cobb v. Delta Exports Inc.*, 186 F.3d 675, 680 (5th Cir. 1999), and the Eleventh Circuit, *Ingram v. CSX Transp., Inc.*, 146 F.3d 858, 861 (11th Cir. 1998), in holding that *Freeport-McMoRan* is limited to cases involving the substitution of parties under Rule 25.  Other courts have applied *Freeport-McMoRan* to cases under Rule 19.  *See Angst v. Royal Maccabees Life Ins. Co.*, 77 F.3d 701 (3d Cir. 1996).  The Ninth Circuit has not specifically ruled on the applicability of *Freeport-McMoRan* to Rule 19.

Relying on these cases interpreting *Freeport-McMoRan* as applying to Rule 25, William Donnelly contends that *Freeport-McMoRan* does not apply in

this action because the instant motion was brought pursuant to Rule 19 rather than Rule 25. This court finds that a more reasoned approach considers *Freeport-McMoRan*'s underlying rationale, not whether a motion is brought pursuant to Rule 19 or 25. *Freeport-McMoRan* held that a post-filing transfer of interest did not destroy diversity jurisdiction. That is exactly the facts presented in the instant case. At the time the First Amended Complaint was filed, William Donnelly, the sole owner of the property, was diverse with respect to Behrens. As discussed above, neither Kevin nor Kikue was an indispensable party at that time. Only after the First Amended Complaint was filed did William Donnelly enter into the Agreement of Sale with Kevin and Kikue. To restrict *Freeport-McMoRan* to motions brought under Rule 25 would, in this instance, elevate form over substance and deter (or perversely encourage) business transactions during the pendency of litigation.

The court rejects William Donnelly's contention and instead holds that *Freeport-McMoRan* controls the instant case. Because Kevin and Kikue were not indispensable parties at the time the First Amended Complaint was filed, their joinder or substitution based on William Donnelly's subsequent transfer of the property to them does not destroy diversity. William's motion to dismiss based on Rule 12(b)(7) and Rule 19(b) is therefore denied.

17

**C.     The Court Will Entertain Behrens's Claim For Declaratory Relief**

Under the Declaratory Judgment Act, the court has discretion in determining whether to hear a claim for declaratory relief.  28 U.S.C. § 2201.  When other claims in addition to the claim for declaratory relief are before the court, the court "should not, as a general rule, remand or decline to entertain the claim for declaratory relief."  *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998).

Behrens's First Amended Complaint contains six claims for relief, sounding in either contract or tort, in addition to the claim for a judicial declaration that the sale of the property is void.  William Donnelly has presented no sound reason for the court to decline to hear Behrens's claim for relief under the Declaratory Judgement Act.  Therefore, in furtherance of the policy of avoiding piecemeal litigation, *id.*, the court will entertain Behrens's claim for declaratory relief.

//

//

//

//

//

## IV. CONCLUSION

For the reasons stated herein, the court DENIES William Donnelly's Motion to Dismiss.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 30, 2006.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Behrens v. Donnelly, et. al.*, Civ. No. 05-00453 JMS/KSC, Order Denying Defendant's Motion to Dismiss